IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| ALLEN R. BLAIR | § | PLAINTIFF |
|---|---|---|
| | § | |
| | § | |
| v. | § | Civil No. 1:15cv400-HSO-RHW |
| | § | |
| | § | |
| YUM BRANDS and TACO BELL | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' [62] MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion [62] for Summary Judgment filed by Defendants Yum Brands and Taco Bell. This Motion is fully briefed. Having considered the Motion, related pleadings, the record, and relevant legal authority, the Court is of the opinion that Defendants' Motion [62] for Summary Judgment should be granted, and Plaintiff's claims should be dismissed with prejudice.

I. BACKGROUND

A.  Factual background

This case arises out of Plaintiff Allen R. Blair's ("Plaintiff" or "Mr. Blair") employment at a Taco Bell restaurant in Gulfport, Mississippi. Mr. Blair worked as an at-will employee at Taco Bell from May 12, 2015, until he was terminated on December 4, 2015. Decl. of Nicholas "Nick" Moret [62-1] at 2-3; Pl.'s Dep. [62-2] at 67. Mr. Blair worked at the restaurant in several different capacities. Pl.'s Dep. [62-2] at 61-62. Sometimes Mr. Blair would take orders; at other times, he would prepare food or clean. Id. at 62.

While he was working on the clock and taking orders at Taco Bell, Mr. Blair was asked by management to solicit customers to complete customer service satisfaction surveys. *Id.* at 62, 63. According to Mr. Blair, his general manager and area coach would receive bonuses for having customers complete the surveys. *Id.* at 62-63. Mr. Blair complains that he did not receive any part of these bonuses. *Id.* at 63.

After Mr. Blair realized management was receiving bonuses, he refused to solicit surveys from customers, *id.* at 102, on grounds that it was not part of his job description to solicit surveys from customers, *id.* at 102-03. Mr. Blair alleges that if he did not obtain completed customer surveys, he feared that he would not be scheduled for as many hours on the work schedule. *Id.* at 103-04.

Mr. Blair also charges that there were two weeks where Taco Bell was shut down due to water contamination. *Id.* at 64, 104. Despite being scheduled to work for the first week, Mr. Blair was not able to work either week due to the restaurant's closure. *Id.* Mr. Blair voiced a request for a "hardship payment" for these two weeks on an employees' group chat software application ("app"), for which he says he was disciplined by management. *Id.* Mr. Blair maintains that he was therefore denied his freedom of speech. *Id.* at 63-64.

According to Nick Moret ("Mr. Moret"), the "area coach" who managed this Taco Bell location in Gulfport, Taco Bell counseled and disciplined Mr. Blair several times during his short employment with the company, and terminated Mr. Blair "after an investigation determined that Mr. Blair attempted to steal a customer's

2

cell phone." Decl. of Nicholas "Nick" Moret [62-1] at 3, 4; *see also* Corrective Action Reports [62-1] at 19-21.

During his employment at Taco Bell, Mr. Blair was paid an hourly wage and was required to clock-in at the beginning and end of a shift, using a unique employee identification number. Decl. of Nicholas "Nick" Moret [62-1] at 4; Timelog Reporting [62-1] at 22-28; Pl.'s Dep. [62-2] at 68. According to records submitted by Taco Bell, Mr. Blair was paid $7.50 an hour when he was hired and was being paid $7.60 per hour at the time of his termination. Decl. of Nicholas "Nick" Moret [62-1] at 4; Pay Records [62-1] at 29-43. It is undisputed that Mr. Blair never worked more than 40 hours during a workweek and was paid by Taco Bell every two weeks. Decl. of Nicholas "Nick" Moret [62-1] at 4; Timelog Reporting [62-1] at 22-28; Pay Records [62-1] at 29-43; Pl.'s Dep. [62-2] at 69, 72.

Every two weeks, Mr. Blair signed a payroll report supplied by Taco Bell confirming that the hours listed on the payroll report were the actual hours he had worked. Decl. of Nicholas "Nick" Moret [62-1] at 4; Pl.'s Dep. [62-2] at 69-70. Taco Bell has presented competent summary judgment evidence that Mr. Blair was paid for all hours that he worked during his time at Taco Bell. Decl. of Nicholas "Nick" Moret [62-1] at 4; Timelog Reporting [62-1] at 22-28; Pay Records [62-1] at 29-43.

Taco Bell provided multiple avenues for its employees to report if they felt that they were not being paid for all hours worked. *Id.* According to Mr. Moret's sworn Declaration, "Mr. Blair did not report any concerns about his pay or incorrect hours logged during his employment." *Id.*

3

B.  Procedural history

Plaintiff filed a *pro se* Complaint [1] in this Court on December 7, 2015, alleging that he was terminated from Taco Bell on December 6, 2015, "because [he] gave voice to [his] civil rights being violated." Compl. [1] at 3-4. Plaintiff alleged that the "extent of [his] employment was 'slavery'" because hours he worked were not processed in payroll if he "wouldn't adheed [sic] to the area coach and general manager [sic] wishes for profitable benefits." *Id*. at 3. Plaintiff asserted that he was entitled to relief because slavery was abolished in 1865; presumably, Plaintiff was referring to the Thirteenth Amendment to the United States Constitution. *Id*. Plaintiff sought $250,000,000.00 in damages. *Id*. at 5.

On February 17, 2016, Defendants moved [9] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for the Court to order Plaintiff to provide a more definite statement pursuant to Rule 12(e). On March 21, 2016, the Court granted Defendants' Motion [9] to Dismiss but allowed Plaintiff leave to file an Amended Complaint. Order [21] at 6.

Plaintiff filed an Amended Complaint [24] on March 22, 2016, which asserts that during his employment at Taco Bell, Plaintiff was "exposed to slavery, by general manager and area coach," and "leaders within employers' companys [sic] 'force' [Plaintiff] to obtain surveys in which leaders received bonuses for good surveys." Am. Compl. [24] at 2. Plaintiff contends that "team members do not receive bonuses," and charges that "begging or harassing customers for a survey to obtain entitled labor hours is slavery" because Plaintiff's only duties as a team

4

member were to "take orders, make the food, and clean entire building." *Id*. According to the Amended Complaint, if Plaintiff "did not obtain surveys, hours would be abstracted [sic] from time card, and or [sic] schedule." *Id*. at 3. Plaintiff "rebelled against [his] indecent involuntary servitude" on December 6, 2015, and was allegedly terminated as a result. *Id*.

On April 4, 2016, Defendants filed a Second Motion to Dismiss [25] pursuant to Federal Rule of Civil Procedure 12(b)(6). 2d Mot. to Dismiss [25] at 1-2. The Court granted Defendants' Motion [25] in part as to any slavery and involuntary servitude claims, and dismissed those claims with prejudice. Order [33] at 6. The Court denied Defendants' Motion [25] as to any wage claims. *Id*.

Defendants have now filed a Motion for Summary Judgment [62] seeking dismissal Plaintiff's remaining claims. Mot. [62] at 1-2. According to Defendants, Mr. Blair was paid for each hour that he worked, was paid above the minimum wage rate, and never worked overtime, rendering summary judgment appropriate as to any wage claims. Mem. [63] at 2, 8-10.

Mr. Blair responds that he "suffered severe violations to free-man civil rights" and "was denied freedom of speech." Resp. [64] at 2. In his unsworn Brief [65], Mr. Blair refers to evidence of "time manipulation," wherein the general manager "manually typed in the total amount of hours during work two-week periods." Br. [65] at 3. Mr. Blair contends that "[l]eaders are encouraged to do what they must, as far as, always keeping sales over labor costs" and that he was forced to sign affirmation documents regarding the hours he had worked in order to receive his

5

paycheck. *Id.* at 4. Mr. Blair further alleges that he did not report any discrepancies due to threats to his employment. *Id.* at 8.

Mr. Blair also claims for the first time in his Brief that Defendants violated "equality of treatment within the company," referencing the Equal Protection Clause of the Fourteenth Amendment, *id.* at 5, and disputes management's explanation of the incidents which formed the basis of the disciplinary Corrective Action forms he received during his tenure at Taco Bell, *id.* at 5-7. Mr. Blair also cites Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") for the first time in his Brief in opposition to summary judgment. *Id.* at 10.

## II. DISCUSSION

### A. Relevant legal standard

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R*

*Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B. Defendants' Motion for Summary Judgment will be granted.

1. Plaintiff's wage claims should be dismissed with prejudice.

Plaintiff's wage claims turn upon whether he was paid the agreed-upon wages for the hours he worked.[1] The competent summary judgment evidence demonstrates that Plaintiff was an hourly, at-will employee. Defendants have submitted evidence that Plaintiff was paid the agreed-upon hourly rate for each hour that he worked. Plaintiff has not presented any competent summary judgment evidence creating a fact question on these claims.

While Plaintiff makes a conclusory allegation in his unsworn Brief [65] that there is evidence of "time manipulation" by the general manager, he has supplied no competent summary judgment evidence to support this assertion. Moreover,

---

[1] Liberally construing Plaintiff's *pro se* pleadings, it appears that he is asserting claims under state law for allegedly unpaid wages. Whether Plaintiff is advancing such a claim under a theory of breach of contract, unjust enrichment, conversion, or the like, the Court is of the view that all such claims would require Plaintiff to show that he was not paid the agreed-upon wages for the hours he actually worked. Because Plaintiff has not created a genuine issue of material fact on this question, Defendants are entitled to summary judgment.

Plaintiff testified under oath at his deposition that he had signed the payroll reports confirming that the hours for which he was paid were correct and that he did not know if those hours were changed. Pl.'s Dep. [62-2] at 103. Plaintiff's concern was instead that he would be removed from the schedule for future hours if he did not have customers complete the surveys. *Id.* at 103-04. However, even if Plaintiff's future working hours were reduced on the schedule due to failure to obtain surveys, Plaintiff has not cited any evidence or authority to support the notion that, based upon the facts of this specific case, he can assert a state-law wage claim on this basis.

Plaintiff also complains that he did not receive part of management's bonuses for completed customer surveys or a hardship payment for the period in which the restaurant was closed for two weeks. Plaintiff has cited no evidentiary or legal authority demonstrating that he was owed any payment for this under his relationship with Taco Bell.

To the extent Plaintiff is attempting to pursue a claim related to unpaid minimum or overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* Defendants have shown that any such claims should be dismissed with prejudice. The FLSA "governs minimum wages and maximum hours for non-exempt 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Sandifer v. U.S.*

*Steel Corp.*, 134 S. Ct. 870, 875 (2014) (quoting 29 U.S.C. § 206(a) (minimum wages); § 207(a) (maximum hours)).

During the period of Plaintiff's employment, the FLSA required an employer to pay each employee not less than $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). "The FLSA requires covered employers who employ their employees for hours in excess of forty hours per week to compensate those employees for the additional hours at a rate of at least one and one-half times the regular rate." *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 162 (5th Cir. 2015) (citing 29 U.S.C. § 207(a)(1)).

The record is clear that Plaintiff was paid above the federally-mandated minimum wage of $7.25 per hour and that he never worked more than 40 hours in one workweek. Plaintiff has not created a jury question as to any potential claim under the FLSA.

Viewing all facts and inferences in the light most favorable to Plaintiff, he has not shown the existence of a genuine issue of material fact as to any wage claims. Plaintiff's conclusory allegations in response to Defendants' Motion for Summary Judgment are insufficient, and his wage claims will be dismissed with prejudice.

2. <u>Plaintiff's claims under the Thirteenth Amendment have already been dismissed with prejudice.</u>

Liberally construed, Plaintiff's Amended Complaint asserted a claim under the Thirteenth Amendment. This claim has already been dismissed with prejudice. *See* Order [33] at 6. Plaintiff nevertheless persists in this argument. *See, e.g.,* Br. [65] at 10; Pl.'s Dep. [62-2] at 61. To the extent Plaintiff continues to assert a claim

9

under the Thirteenth Amendment, Defendants' request for summary judgment will be granted for the same reasons stated in the Court's previous Order [33]. *See* Order [33] at 4-5.

> 3. <u>Any freedom of speech claim under the First Amendment or equal protection claim under the Fourteenth Amendment should be dismissed with prejudice.</u>

Plaintiff stated in his deposition that he was making a claim under the First Amendment because he was purportedly denied freedom of speech related to his comments on the employees' group chat app on the subject of his requested "hardship payments." Pl.'s Dep. [62-2] at 63-64. In opposition to summary judgment, Mr. Blair raises for the first time an allegation that Defendants also violated "equality of treatment within the company," and references the Equal Protection Clause of the Fourteenth Amendment. Br. [65] at 5, 11.

Plaintiff raised no First or Fourteenth Amendment claims in his pleadings before he filed his Brief in response to summary judgment on February 17, 2017, over six months after the deadline for amending pleadings set forth in the Case Management Order [41]. To the extent Plaintiff is seeking leave to amend his Complaint, his request is untimely and will be denied. The record evidences undue delay and bad faith or dilatory motive by Plaintiff in not asserting such claims earlier. *See SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 428 (5th Cir. 2016). Plaintiff has had ample opportunity to amend his Complaint, and permitting such a late amendment would unduly prejudice Defendants. *See id.*

Even if Plaintiff could amend his pleadings at this late date to assert a First or Fourteenth Amendment claim, such claims would fail on their merits. *See id.* "Title 42 U.S.C. § 1983 provides a vehicle by which a plaintiff may seek redress for constitutional injuries." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009); *see also, e.g., Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016) (First Amendment claim); *Gibson v. Tex. Dep't of Ins. – Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (Equal Protection Clause of the Fourteenth Amendment claim). "Title 42 U.S.C. § 1983 provides a cause of action against '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1420 (2016) (quoting 42 U.S.C. § 1983).

For Mr. Blair to prevail on a § 1983 claim, a state actor must have deprived him of a constitutional right. *See id.* Mr. Blair has not alleged or shown that either Defendant was acting under color of state law. *See id.*; *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Defendants' Motion for Summary Judgment as to any First and Fourteenth Amendment claims will be granted.

4. <u>Any claim under Title VII should be dismissed with prejudice.</u>

Plaintiff refers to Title VII in his Brief in opposition to summary judgment. Br. [65] at 10. Plaintiff did not raise such a claim until he filed his Brief on February 17, 2017, over six months after the deadline for filing amended pleadings.

Any request to amend the Complaint to add such a claim is grossly untimely, would unduly prejudice Defendants, and will be denied. *See SGIC Strategic Glob. Inv. Capital, Inc.*, 839 F.3d at 428.

Moreover, permitting an amendment to add a Title VII claim would be futile. *See id.* Mr. Blair's Brief does not contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, nor does he offer any substantive argument on this claim. Mr. Blair has not supplied any competent summary judgment evidence to support such a claim. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (delineating elements of Title VII claim of which an employee must produce evidence in order to satisfy his initial burden at summary judgment).

To the extent Mr. Blair now attempts to assert a Title VII claim, there is also no indication that he filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which is fatal to such a claim. *See* 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983) (although filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court"). Defendants' Motion for Summary Judgment should therefore be granted as to any Title VII claim.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

Defendants' Motion for Summary Judgment should be granted, and Plaintiff's claims against Defendants should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [62] for Summary Judgment filed by Defendants Yum Brands and Taco Bell is **GRANTED**, and Plaintiff Allen R. Blair's claims against Defendants Yum Brands and Taco Bell are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 28th day of April, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE